Erica v. Isac Schwarzbaum So, we have Ms. Blank for the appellant and Mr. Carpenter for the government. Ms. Blank, if you are ready, please proceed. My name is Stacey Blank and I'm here today on behalf of the appellant, Isac Schwarzbaum. After a five-day trial in this case, the United States District Court found that Mr. Schwarzbaum did not knowingly violate the FBAR filing requirements. The court also found that Mr. Schwarzbaum's conduct did not reflect an intent to conceal his foreign accounts. But notwithstanding the absence of any knowing or intentional conduct, the District Court nonetheless imposed very substantial willful FBAR penalties on Mr. Schwarzbaum for the years 2007 through 2009. Doesn't United States v. Ruhm address the willfulness argument that you're making? So, it certainly narrows it substantially and that case was decided after the briefing in this case was concluded. But it doesn't entirely dispose of the argument. Also, there are two points that are left. In Ruhm, this court adopted an objective standard of recklessness and that essentially requires proof that a reckless disregard of a known or obvious risk. And then the court also, based on Safeco, refined the objective standard to say that it must reflect an unjustifiably high risk of harm that is so obvious it should be known. So, what the District Court decided here is that Mr. Schwarzbaum's review, one time, of the FBAR filing instructions made his filing obligation so obvious that his decision to follow the advice of his accountants was no longer reasonable. But what's left after Ruhm is the United States Supreme Court's decision in Boyle. And in Boyle, the court says that a taxpayer is entitled to rely on the advice that he or she receives from his or her accountant or lawyer. But did Mr. Schwarzbaum tell his accountants about these foreign accounts before? Well, we know he told them about some of them because he reported some of them, right? So, he didn't fail to file entirely. He just didn't report completely. And what his accountants told him is that with respect to his foreign accounts, the only ones he had to report were ones that had a connection to the United States. And so, that's what he did. And in fact, for 2006, had his accountant filled out the form. And so, in 2007 and in 2009, he filed his account. He followed the form that the accountant had prepared. And in fact, he added in 2009 a Swiss bank account, which turned out to be the largest bank account that he had because he had transferred money from the United States into that account in anticipation of his move back to Switzerland. And so, he, you know, clearly there was a disclosure of some of the accounts because those accounts were reported and they were reported by the accountants. And the advice back to him was you don't have to report any that don't have a connection to the United States. That made sense to him because he also lived in jurisdictions where taxation is based on residency and not citizenship. And that's the rule there. And so, that's what he was accustomed to. But why is it unreasonable, though, the year that he decides to not rely on the accountants? We all know that tax years, every tax year, the laws change, the facts change, and he's now doing it on his own. So, yes, in the prior years, he's had some advice of an accountant, but now he reads the form and he reads the instructions. Why is that an unreasonable position or an unreasonable finding for the district court to say that actually put him on notice that, uh-oh, you actually have some things you needed to report, you better talk to somebody about it? Why is that unreasonable? I think the reason is, first of all, there wasn't a change in the law between 06 and 08. But he reads the form, and if you read that and you realize, oh, my gosh, perhaps the advice I've received is wrong, why isn't that putting him on notice and why is it not reckless to disregard that once he undertook to do this on his own? So, I think there are a couple of reasons that it was not obvious and it did not put him on notice. First of all, we know the accountants didn't understand it, and they certainly have a lot more training and expertise than his one-time review of the instructions gave him, and there's no dispute the accountants got it wrong. It's also interesting to note that in 2009, for the same years that are at issue in this case, the National Taxpayer Advocate reported to Congress that trying to navigate the guidance and instructions on the FBAR was like going on a scavenger hunt. And so, you know, these folks who have a lot more expertise than Mr. Schwartzbaum had didn't understand the filing requirements, but now the court has said that his one-time review of the filing instructions deemed him to be an expert that should have known better and should have questioned his accountants. Maybe I would find it more confusing if I had more money, but as I read it, it seems pretty straightforward to me. So, I think the Flume case is interesting on that. Flume involved a very similar issue where the taxpayer reviewed the instructions and consulted a tax preparer, and the tax preparer said, no, you don't have to file. And the court there said, well, the fact that the tax preparer got it wrong suggests to me that it's not so obvious after all. Is English his first language? It is not. Right. So, is it like his fifth language or something, right? It's like his fifth language, yeah? Yeah. He was born in Germany. He attended high school in Germany. He has no higher education, no college, no, you know, and he then lived as a young man in Switzerland. His, you know, English at the time of trial, I think, was a lot better than it was at the time that he was filling out the forms because he had taken, you know, some additional training. But at the time, he was not a proficient speaker. Let me ask you this. So, you're in this sort of unusual spot where RUM was decided after this case was tried and after you've even briefed it. Give me your honest perspective on this. I know I shouldn't have to say that, but if we were to send this back down for the district court to have an opportunity to apply RUM, would that be meaningful relief for you, from your perspective, or would that not? So, I think the district court already applied the RUM standard. So, I don't think that's going to change the district court's view of the case. What would be meaningful to our client is for, you know, for instructions to accompany such a remand to say, okay, you know, it is obvious, given that the accountants themselves didn't understand, given that the national taxpayer advocate says this is confusing, you know, are you sure that these instructions really are obvious to a reasonable person, a reasonable person who is an immigrant, a reasonable person who is not a native English speaker, a reasonable accountant? I mean, who is the reasonable person that should be put on notice by these instructions? Because we know the experts got it wrong. Let me ask you the same question with regard to your argument that this should be remanded to the agency. Does that give you anything? Sure. It gives us everything. What benefit to Mr. Schwarzbaum comes from a remand to the agency? The statute of limitations says RUM. Okay. Well, let's assume we don't think that's true. I mean, I have a really hard time thinking that makes any sense at all. So let's just, okay, but let's, I mean, is the agency, is the agency authorized to impose lesser penalties? Could they change what they've decided they want to do? I mean, what could happen there? Not only is it authorized, it's required to consider whether further mitigation is appropriate. And so because it hasn't had the opportunity to do that, we don't know what the answer is. The government is arguing, well, you're going to get to the same point anyway, so it's harmless. But the Chenery case, the Aikens case, all of the post hoc revision cases say, no, you can't uphold the agency's determination on a better and more correct procedure than the one the agency actually relied on. So we know that can't happen. So then the question is, okay, well, is it harmless error if you think you're going to arrive at the same assessment? We don't know whether we're going to arrive at the same assessment because the Internal Revenue Manual specifically instructs the examiners that they have to consider further mitigation beyond the statutory mitigation and the maximum penalty that's provided. And we know that hasn't happened. What he's gotten is the maximum that he can get, but nobody's considered whether those numbers make sense given some of the inconsistencies that we've Is this a case of be careful what you wish for? If we were to send it back to the agency because they have the ability to mitigate, isn't it possible that in using the correct numbers and then they apply the mitigation that actually the penalties are higher? I don't think it can get any higher. I think we're at the highest. Right, so you mean as a factual matter it can't get any higher, not as a legal matter? I mean, you know, he's getting the maximum now. And so, you know, I think that, you know, that's, you know, that's, he's getting the maximum plus the statutorily mandated mitigation, but they can make it much lower. And, in fact, the instructions are that, you know, in every circumstance and every year the examiner needs to look at the mitigated penalty to determine whether it makes any sense or whether further mitigation is appropriate. And, of course, the discretion that is given the IRS to consider mitigation is not unfettered, right? I mean, they have an obligation to treat similarly situated taxpayers the same. And so they can't decide just because they're upset with Mr. Schwartzbaum for challenging this, he gets no mitigation, whereas others would. Is there any information in the record about, because you're saying that the IRS calculated incorrectly, it started at the highest annual balances for the foreign bank accounts when it should have looked at the June 30 balances. Do we know what that delta is? Is there anything in the record whether it's a substantial difference or a minuscule difference? We don't know because they never asked for the information or if they had it they never used it. So the computations that they did are based on the highest aggregate balance, and I think that's one of the defects in what the district court did, too. The district court said, okay, well, you know, I'm going to, you know, you can't use estimated balances, but then I'm going to use the estimated balance. And so, you know, I guess, you know, going back to your prior question, could it, is it possible that there could be a slight increase maybe because I think what the district court did is it said, okay, well, I'm going to use estimates some places, and some places I'm just going to zero. And so it's possible that the highest account balance would be zero, would be something higher than zero, but would have to be pretty substantially higher than zero because the penalty that accompanies zero is nonetheless still $100,000. So I think the swing is not likely to be substantial if it is . . . The biggest benefit for you, though, is with an agency remand, it allows you to pursue the statute of limitations. It allows us to pursue the statute of limitations, and also even if we don't prevail on the statute of limitations, it allows us to pursue additional mitigation beyond the statutorily mandated mitigation. It allows us to say, okay, come on, you've tried this now, the district court has spoken, no knowing violation, you know, because the government's case, you know, was all pointing to, he engaged in all this conduct to conceal the accounts. But that's now all off the table. The district court rejected that. And so the question is now, do you still feel the same about the mitigated amount of the penalties, given that the guy's conduct was not knowing and was not intentional? Haven't you asked us to decide the statute of limitations question? And I'll confess that I share Judge Brasher's skepticism, because that would mean that any time . . . you could almost run out the clock on a penalty by appealing the case. In a lot of instances, our appeals take a little while. And so I don't quite see how that can be . . . Well, keep in mind, this is a collection case, right? This is a collection case. And so there's a six-year statute of limitations from an FBAR penalty, and to assess an FBAR penalty, and if . . . If the penalty, quite right, consider an adjustment, then why doesn't that simply . . . why doesn't the original assessment count as falling within the statute of limitations? Because the district court has set aside that assessment as contrary to law. So it's the equivalent of if, you know, my complaint has been dismissed and the statute has run. If I have to refile the complaint and the statute has run, I'm out of luck. And that's the same that's happened here. I mean, the court has set aside the assessment as if it did not exist, it's contrary to law, and then proceeded to reassess new penalties as a substitute. But the problem is the statute has run, and the court was precluded by the running of the statute of limitations, as is the IRS. Do you have a good case that shows a court making a decision on the statute of limitations like the one you're asking us to make here? So the best case that I have is the one that I cited in the brief, which I think is called Brandt. And it essentially says, okay, an assessment was issued, but it wasn't properly signed. And by the time it ran its course and it got set aside because it wasn't signed and a new one was, you know, was to be issued, the time had expired and the court said, this is more than just a technical issue. You know, there are real reasons that the statute of limitations apply, and they bind both taxpayers and the government equally. And, you know, once that assessment was set aside as illegal and a new assessment now needs to be put in its place, the time for doing that has run. In that case, it was an error in the original assessment rather than a court's conclusion that there was a legal error in the calculation, right? Yeah, and I would suggest that really, you know, an error in the original assessment probably should have, you know, been given greater latitude than the assessment in our case, which the district court found was just plainly contrary to law. It was not a technical error. And thank you, Ms. Blank. You've reserved some time for rebuttal. Mr. Carpenter. May it please the court. My name is Clint Carpenter. I represent the United States in this case. My friend on the other side has changed her position quite a bit from her briefs here in the argument. As was discussed earlier, we think that RUM resolved the issue of the correct willfulness standard, and it's the standard that the district court applied. And so, the question of the legal standard has been settled, and Mr. Schwarzbaum in his reply brief conceded on page one, and then again on page 13, that they are not challenging the district court's factual findings, the factual findings of recklessness. So the discussion here today about what the district court found and what the accountants told Mr. Schwarzbaum and so forth, in their briefs, they said they aren't challenging any of that. And so, you know, the court, we've covered what the facts are that support the court's finding of recklessness. I'm actually, I'll tell you, I'm actually confused by that because I, so, you know, when Congress passed this statute, they provided for one kind of fine for non-knowing violations, for non-reckless violations, whatever court you want to use, non-willful, and then a different kind of fine for willful ones. And so, in both cases, you're going to have people not disclose their accounts, right? Sometimes not willful, sometimes willful. What exactly is the fact here that says this is one of the willful ones as opposed to the not willful ones? Well, and again, those facts aren't disputed. Yeah, just what is it? Yeah, but so, well, so one is that in 2007 that he actually read the FBAR instructions and that put him on notice that he, in fact, did not disclose any of his Swiss accounts to his accountants for the years 2007 through 2009. He did disclose some of them. I think the easy answer is that the years that his accountants did it, it was not willful, right? And the years that he read it, it was. Well, sure, yeah. You can certainly look at it that way. Well, but that's an affirmative defense he has, right? I mean, that's where he proves under, I forget the name of the case, he proves that he's relying on his accountant's advice. Right, and that actually isn't an affirmative defense. For the Boyle case, I think you're right. Right. But that reasonable cause defense is available for non-willful penalties. It's in the statute that there's an exception for reasonable cause, and that exception isn't in the statute for willful penalties. Right, right, and so I guess that's my point. That doesn't really, the fact that he's relying on his accountants or not, that's a kind of a separate issue as opposed to whether it's willful or non-willful, right? That's right, that's right, and so, and so, but. What is it that makes it willful? Is it that he saw the form? Well, no, I mean, it's the reckless disregard of statutory duty. But that's going to be in every, I mean, my point is there are going to be some of these people who are willful and some of them are not, so all of them are going to not disclose the accounts, right? That's right. So, what beyond not disclosing the account did he do that made this on the willful side as opposed to the non-willful side? Right, and I think it would be the indicia of recklessness, which would be having read the instructions but not actually following the instructions, that he read the instructions and then self-prepared his FBAR forms for 2007 and 2009. He didn't file one at all for 2008. You know, he, you know, he engaged in a variety of efforts to prevent the foreign banks from disclosing his account information to the IRS, which was, you know, he used account pseudonyms. He instructed several of the banks. So that's using the PIN numbers and those things. Exactly. Yeah, yeah. Okay. Right. You know, instructed a number of not to invest in U.S. securities. And these are sort of common things that people have Swiss accounts, which I wish I had enough money for that. But I guess these are sort of common things that are done to conceal assets. And so, all of these things indicate that there was at minimum a reckless disregard or, alternatively, as the district court found, willful blindness, which is a sort of a subjective version of it. How does, so how does, I mean, and I really am struggling with this, how does telling the Swiss bank, hey, don't, you know, I'm going to use this number for my bank account and I don't want you engaging in, you know, American-related securities transactions, how does that show that he willfully didn't disclose that account? I could get it if you were saying that he was like an American, he was like living, he was a, I don't know, a school teacher in Texas and she set up a Swiss bank account and said, like, do it under this number, don't translate anything to America. But if he's living in Switzerland, I'm having trouble seeing how that shows a sort of a plan to not file this form. Right. Well, he was a U.S. citizen at all of the times, a naturalized citizen. And I don't recall specifically where he was living at this year's. He lived in the U.S. for many years in addition to having previously lived in Switzerland. And so, I mean, I think it's ultimately that's why the recklessness is an issue of fact that's reviewed for clear error. It's because the finder of facts sort of looks at all of these circumstances and weighs them, puts them together and sees, does this indicate that there was, you know, a reckless disregard? Was the risk that they were not fulfilling their FBAR obligations so obvious that it's reckless? And the district court here found that it did. And we don't think there's any clear error. And the other side has said they're not challenging that. Yeah. What about the idea of remanding this to the agency? And here's, I think, maybe the best argument for the other side to remand to the agency is that the agency's arguments at the trial were that this was a knowing, you know, truly willful violation, that this was part of a scheme to hide his assets. And the district court seemed to pretty clearly reject that. And given that the district court said this was something else, might there be a reason that the agency would say, okay, well, you're right, we shouldn't be imposing these super high fines on this guy if that's what he did? He didn't really do the kind of thing that we thought he did? Well, hypothetically, they can. I mean, when circumstances change, you can always say, well, the agency could look at that and do something different when you've got a statute like this that gives the agency basically total discretion just up to a statutory maximum. And so they could. But there's nothing in the administrative record to indicate that the IRS based its determinations on anything, any belief that there was a specific scheme or anything like that. I mean, willfulness has included recklessness under general case law. It was only decided in this circuit in RUM, but it had been decided in other circuits in another context for a long time. And so the IRS isn't distinguishing, or at least there's nothing in the administrative record to indicate that they were assuming that there was an actual, there was actual knowledge and so then they would say, oh, well, it was just recklessness, so we wouldn't change it. That's just not part of the administrative record. So I mean, I can't say they couldn't, but there's nothing to indicate that they would. What about the, I mean, I guess one of the, and I'm not an administrative law person, but it's, if I know one thing about administrative law, the idea is that the agency, when there's some exercises of discretion going on, that courts are supposed to let agencies exercise that discretion, right? That that's usually what you do. And I guess from, if that's kind of the principle that we might have that underlies administrative law and the way courts deal with agencies, why isn't the proper thing for the district court to have done to say, you know what, I find that one year of this goes out, I find that there's some difference, I view this differently than the agency, and I'm going to modify this, I don't think you did this fine exactly right, why isn't the right result of that to say instead of I'm just going to do it myself and then impose a judgment to say I'm going to send it back to the agency and y'all exercise your discretion, if you want to come back with me with a higher fine or the same fine or whatever, you do it. Why isn't that the right answer? Right. So that would have been the right result after the court's initial determination where they decided that, the court decided that the IRS had made this error and said that it was setting aside the assessments. If that had been the end of it, then remand would have been the right result. We're not arguing that the district court had authority to do what it sort of purported to do after that of making these different assessments. But what ultimately happened, and the district court raised all of that was sort of sua sponte and hadn't had any briefing or anything from the parties, and so it sort of created an issue where there hadn't been one previously, and then the court ultimately had to walk it back and say, well, this error that I found, if it was an error, which the court said any error, ultimately was harmless. And so, and it looked at the calculations, it had asked the parties to submit calculations and the government had done that, but had said these calculations show that the error was harmless because even if you did it the way the district court said they were supposed to, the penalties the IRS actually assessed were below that. Well, but below the maximum, right? They weren't equivalent to, say, the minimum penalty that was possible. And so, the best analogy that I can think of is if there's a sentencing guidelines problem and the district court determines that the maximum sentence is 20 years, but sentences the individual to 10 years instead, and on appeal, the circuit court determines that the max is 12 instead, don't we always remand for the district court to reconsider with a proper understanding of what the maximum was in the first place? I'm going to defer from your question that you think that is the case and I'll defer to your wisdom on the criminal side of it. I'm not really sure. The sentencing guidelines, it's been a while since I've dealt with it. That's fair. But, you know, assuming that's the case in the sentencing guidelines, I understand the analogy. I think there are two things here. One would be that the other side hasn't pointed to anything substantive to, as to any reason why the IRS would reach a different result. It could reach a higher result if it were remanded to the IRS. Or it could reach a lower result, right? Yes, that's right. I have a chart here. Perhaps my clerk is just enterprising, but it looks like, for instance, one year the IRS said the mitigated maximum penalty was nearly $9 million and the actual mitigated maximum penalty was about $4.5 million and the penalty assessed by the IRS was 4.1. Don't you think the IRS might come to a different ultimate conclusion if they thought the max was $4.5 million versus almost $9 million? They could. They could. I think I admire your unwillingness to speculate about what the IRS might do. They don't like it when I do that. So, yeah, they could. I don't, I think there's certainly reasons to think that they wouldn't. I mean, they did these calculations based on the maximum penalty, or sorry, the maximum balance in the accounts during the year, during the year at issue instead of on June 30th of the following year. There's nothing in the statute that prohibits the IRS from considering the maximum balance during the calendar year. That may or may not control the statutory maximum, but the IRS certainly can consider it and it's the most relevant balance because that's the balance that triggers the obligation to file an FBAR. You have to file an FBAR if your maximum balance during the calendar year exceeded $10,000. So that's the balance that triggers the FBAR. That's the balance that you're required to report in the FBAR, and so that's the balance information that was withheld from the government. And so it's certainly appropriate for the IRS to look at those balances. The IRS did that. It applied these calculations using those balances and it reached a number that it said, well, that's just too high. And so it, following its guidelines, it applied further mitigation and came at a much lower  So I guess how can we know, I think we could even suppose that if the IRS applied those same mitigation points to the lower max, it would be likely to come up, not certain, but likely to come up with an even lower penalty amount. If they took that same approach, yes. On the other hand, they could say that, well, we consider what we said, I mean, the IRS set what it thought was an appropriate penalty and it was not a penalty that it, it wasn't just a matter of rote calculation. They did rote calculations and then said, that's too much. This is the appropriate penalty for this situation. And so they could do with anything, you know, zero to the statutory maximum on a remand, but they set a penalty that they believed was appropriate and that was not a calculated penalty. The other thing I would point out is that really your honors don't need to decide this issue. The only relief that they have asked for in this appeal is not a remand to the IRS. They've had many opportunities, have never asked for that. What they've asked for, if you look in their briefs, is that they want a remand to the district court with instructions to enter judgment of zero dollars, a judgment of zero dollars argument, which I won't belabor that we, we don't think that's right. And so if your honors agree that the statute of limitations would not prevent the IRS from making a change on a remand, then then they're not entitled to the only relief that they've asked the court for. Can I ask you one, one more question about this? So this is, there's a lot of litigation over this because of the UBS scandal and all that kind of stuff. What is, has there been as a, I mean, I hope that you know this, I mean, has there been a practice of courts, once this gets to the courts to litigate, has there been a practice of the IRS receiving those on remand and treating it as a need to do a new assessment? Has there been some other practice? If we were to sort of remand this, would we be the only court that's done that? What's your view on that? If you were to remand to the IRS, you would be the second court that's done that. A district court did that recently in a case called Gentjies, which was the subject of some 28 J letters. I'm not, I do not know if that case is, if the government's going to appeal. I'm not sure if the judgment's even final. But the court did that in one case. The IRS's position is that they don't need to make a new assessment. They can make adjustments without, without making a new assessment. So when you, when you come into court seeking to, I guess, collect the penalty that you've assessed, I mean, in a normal collection action, so, you know, somebody owes me $20,000 and I file my lawsuit against them and I say, pay me $20,000. What I'm really saying, too, is pay me $19,000, pay me $18,000, pay me $17,000. You know, I'm not, that's my top line number. And you know, if the court doesn't give me my top line number, the court decides that I'm not due $20,000. The court then gives me $19,000 or $18,000 or whatever. Is that the way this action works, or is the IRS limited in, for some reason, in saying this is how much or no different? Does that make sense? Does that question make sense? All right. Are you asking is the IRS bound in a way that the, in a way that a court? That a normal, that a normal collection action, a normal lawsuit isn't bound? No. I mean, the only limitation on the IRS's discretion in setting the amount of a penalty for a willful violation is the statutory maximum. Right. And then the IRS has internal guidelines that they, that don't have the force of law, as the court recognized in RUM, but that they generally follow, that can lead them to a, you know, mitigation and so forth. I may, the very last thing I'd like to say would be that, my friend on the other side mentioned that the IRS could consider mitigation, mitigating circumstances, reasons for mitigation on remand. That was not argued in the first time before the agency, and so they, they, they've waived that issue, as we said in our briefs, and they certainly shouldn't be allowed to, to raise that for the first time on a remand to the agency. Thank you. Thank you, Mr. Carpenter. Ms. Blank, you have three minutes for rebuttal. Thank you. My first question is this, did you ever ask for remand to the IRS to recalculate the penalty? And if we ordered that, would that be a relief that you have not sought for your client? No, not at all. I mean, we asked for a reverse and a remand. We pointed out that because the statute of limitations has run, neither the district court nor the IRS on remand will be permitted to, to consider a new assessment, but we've maintained all along that the appropriate result in the district court should have been a reversal and a remand to the agency for the consideration and possible assessment of a, of a, of additional, new penalties, a replacement penalty. Because I think this is important, can you tell us where you made that argument in the, in the district court maybe? We did make that in the district court in the supplemental briefing that we filed. When the district court first announced that she was going to conduct her own penalty assessment and asked for supplemental briefing, in the first response that we filed, we said, wait, you can't do that. The appropriate remedy here is, you know, now that you've set aside the assessments is to remand that to the agency. We did raise the statute of limitations at that point also, but we did say that remand to the agency was appropriate. A few other points that I would like to point out. Under the new objective standard for recklessness that we have, it is not at all clear to me that the district court's findings with respect to willfulness are now subject to the clear error standard. It seems like to me the objective standard is, because it's no longer subjective, it no longer turns at all on what Mr. Schwartzbaum knew or did. All it, we haven't contested that he read the instructions. That is a fact finding, and in fact we have not challenged that. But the implications, whether or not those instructions are, as a matter of law, obvious,  I think Judge Brasher's question is a really interesting one about what are the facts that differentiate between a willful and a non-willful violation is particularly pertinent in this case, because the IRS examiner and the supervisor initially recommended a non-willful penalty, and there were no changes in the facts between the $221,000 recommended non-willful penalty and the $13 million, 12-5 willful penalty, based on exactly the same conduct and conduct that the government could not substantiate during the trial. I looked back at the order, and it seems to me that the district court specifically drew the line that I was proposing, which is the conduct in 2006 was not willful because he relied on the advice of his accountants, and then moved on to 2007 through 2009 and concluded that that conduct was reckless. And now we know from RUM that reckless means willful. So why isn't the dividing line between willful and not willful, following your accountant's advice versus taking on the duty to figure it out yourself? I think the question is, was his singular reading of the instruction, did that make his filing obligation so obvious to him that he should have disregarded the advice of his accountants? Or given the backdrop of the advice of his accountants that he had when he read these instructions, were they sufficiently obvious to put him on notice, and are we going to disregard Boyle that says that a taxpayer can rely on the advice of their accountants? And in the Flume case, the Flume case says, unlike what the government is arguing here, the Flume case says that you can look to the advice of accountants to determine whether those filing instructions are in fact obvious as a matter of law. And if your accountants tell you that you're not obligated to file, then maybe they're not so obvious after all, because the professionals don't know. Ms. Blank, thank you. Thank you both. We have your case under submission, and with that, we are in recess until tomorrow morning.